UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHELLI B.,

              Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

CASE NO. C21-5217-BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff appeals the denial of her applications for Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI") benefits for the period from August 1, 2007 to May 31, 2015, at which time plaintiff was found to be disabled. She contends the ALJ erred by (1) giving no reasons for rejecting plaintiff's testimony; (2) failing to provide specific and legitimate reasons for rejecting the opinion of treating podiatrist Dr. Bruce Brewer, D.P.M.; and (3) failing to rate the correct functional areas in assessing plaintiff's mental impairment at step three. Dkt. 10. The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

The decision at issue is the fourth ALJ decision stemming from plaintiff's March 2009 applications for benefits. *See* Tr. 68–71. In March 2011, ALJ Verrell Dethloff found plaintiff was

not disabled. Tr. 14–36. The federal appeal was, however, remanded by stipulation of the parties. Tr. 776–79. In June 2016, ALJ Laura Valente found plaintiff was disabled beginning June 1, 2015, but was not disabled prior to that date. Tr. 576–93. As a result, plaintiff was eligible for SSI benefits but not for SSDI benefits because she was found to be not disabled as of her date last insured of March 31, 2011. Tr. 592. Subsequently, this Court remanded for further proceedings because, for the period before June 1, 2015, the ALJ had not properly considered the opinions of state agency medical consultants Drs. Hurley and Platter, Tr. 2531–33; did not properly consider the evidence concerning plaintiff's ability to stand and walk, Tr. 2535–39; and for further consideration of plaintiff's hand/arm impairments, Tr. 2539–41. In July 2018, ALJ Valente again found plaintiff to be not disabled from August 1, 2007 through May 31, 2015. Tr. 2414–27. In April 2019, the federal appeal was again remanded by stipulation of the parties. Tr. 2816–19.

On remand, ALJ Glenn Meyers held a new hearing and issued the November 2020 decision at issue here. Tr. 2739–49. At step two, ALJ Meyers determined that plaintiff had the severe impairments of trochanteric bursitis; fibromyalgia, bilateral carpal tunnel syndrome; Achilles tendonitis, status post multiple surgeries; obesity; depressive disorder; anxiety disorder; and panic disorder. Tr. 2743. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal the severity of a listed impairment. *Id.* The ALJ assessed a residual functional capacity ("RFC") during the relevant period of sedentary work with additional physical, postural, and mental limitations. Tr. 2744. The ALJ determined at step four that the RFC precluded plaintiff from returning to past relevant work but determined at step five that plaintiff could perform jobs that exist in significant numbers in the national economy. Tr. 2747–48. The ALJ therefore found that plaintiff was not disabled from August 1, 2007 through May

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 2

1 31, 2015. Tr. 2749. ALJ Meyers's November 2020 decision is the Commissioner's final

2 decision.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. Id. at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Although plaintiff offers an alternative interpretation of the evidence, she has not demonstrated that the ALJ's decision was unreasonable, unsupported by substantial evidence, or the result of harmful legal error.

**1. Plaintiff's Testimony**

Plaintiff contends that the ALJ harmfully erred by providing "no reasons" for discounting plaintiff's testimony about her functional limitations. Dkt. 10, at 5–9. This is an incorrect characterization of the decision because ALJ Meyers expressly adopted ALJ Valente's July 2018 reasons for discounting plaintiff's testimony. *See* Tr. 2747.

ALJ Meyers discounted plaintiff's testimony as inconsistent "with the medical evidence and other evidence in the record from August 1, 2007 through May 30, 2015 for the reasons explained in this decision and the previous decision at Exhibit 28A [ALJ Valente's 2018 decision]; all parts of which have been adopted by me, absent those the United States District Court [] deemed erroneous at Exhibit 30A [the 2019 stipulated remand] and have been discussed

and altered herein."[1] Tr. 2747. ALJ Valente, in turn, discounted plaintiff's testimony regarding her functional limitations as inconsistent with the medical evidence, plaintiff's statements, and plaintiff's daily activities. Tr. 2795–2800.

Plaintiff argues that ALJ Meyers's decision nonetheless failed to explain why he rejected plaintiff's testimony that she had (1) significant problems using her upper extremities; (2) significant symptoms of depression which would have limited her ability to attend work; and (3) limitations in sitting and the need to lie down during the day due to pain. Dkt. 10, at 5–8; Dkt. 12, at 4. That contention is unpersuasive because ALJ Meyers adopted ALJ Valente's evaluation of these issues; ALJ Valente cited clear and convincing reasons for discounting plaintiff's testimony; and plaintiff is unable to demonstrate how that reasoning was unsupported by substantial evidence, legally erroneous, or unreasonable. *See Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996).

First, ALJ Valente demonstrated that plaintiff's testimony about her upper-extremity limitations was inconsistent with the medical evidence, her own statements, and her daily activities. ALJ Valente noted that although plaintiff testified that her bilateral hand problems began in 2005, there was no confirming medical evidence of this until February 2010; although plaintiff claimed no improvement in her hand condition, the medical records show periods with few complaints of hand/wrist pain and improvement after undergoing carpal tunnel release; and there were numerous findings indicating normal strength, sensation, and range of motion in the hands. Tr. 2796–97; *see* Tr. 347–53, 397–98, 443, 459–71, 483, 1273, 1186–87, 1217–18, 1232, 1249, 1471–72, 1770–71, 1823–24. ALJ Valente cited plaintiff's inconsistent statements about

---

[1] The 2019 stipulated remand did not direct the ALJ to reexamine plaintiff's testimony. Rather, the order directed the ALJ to consider whether plaintiff's trochanteric bursitis was a severe impairment and to reevaluate the opinion evidence. Tr. 2816–17.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 4

her capabilities, such as reporting that she stopped work in 2007 due to her impairments, later testifying that she stopped work because it was a temporary job, then testifying that she was fired due to symptoms related to irritable bowel syndrome, and later saying that she was fired because she was sick while recovering from drug addiction; testifying that between 2007 and 2015 she had difficulty using her hands while also implying that her problems with writing were more recent; and testifying both to difficulty in lifting a laundry basket and folding things due to pain and to taking care of her household, doing the laundry, cooking and meal preparation, and driving her husband to his welding coursework. Tr. 2797–98; *see* Tr. 172–95, 549, 1707, 1788, 2448–81. ALJ Valente referred to daily activities that contradicted her claims of debilitating upper-extremity limitations, such as managing the household (including shopping, cooking, meal preparation, and laundry), driving regularly, and attending college full-time for much of the relevant period. Tr. 2798–99; *see* Tr. 350, 549, 1128, 1145, 1154, 1162, 1167, 1214, 1240, 1272–73, 1480, 1707. Moreover, though plaintiff indicated that her carpal tunnel syndrome was aggravated beginning in January 2012 due to increased typing at school, she continued in school full-time and did not report significant problems with school due to hand or upper extremity pain apart from engaging in yoga for a physical education class. Tr. 2799; *see* Tr. 1121, 1128, 1145, 1154, 1162, 1167, 1214, 1240, 1272–73.

Second, ALJ Valente adopted her earlier 2016 reasoning, which had not been undermined during the remands, regarding plaintiff's mental limitations. Tr. 2794–95. ALJ Valente discounted plaintiff's claim of debilitating mental limitations by noting the inconsistency with her own testimony, presentation to treating providers, reports of functioning with prescribed medications, activities of daily living, and the objective medical record prior to June 1, 2015. Tr. 582–84. For example, plaintiff has generally presented to treating providers as friendly and

cooperative with normal thought processes; mental status findings have been within normal limits; and the record shows that plaintiff's symptoms improve when she is compliant with recommended treatment, such as not abusing methamphetamines or substituting marijuana for medication. Tr. 582–83; *see* Tr. 322, 402, 405, 407–09, 411, 422, 539–42. ALJ Valente gave significant weight to the opinion of treating psychiatrist Dr. Karin Barkin, M.D., who observed "very mild residual symptoms of depression," and to consultive psychiatric examiner Dr. James O. Raney, M.D., who opined that plaintiff had a GAF score of 60, which indicated moderate symptoms or a moderate impairment in social or occupational functioning. Tr. 583–85; *see* Tr. 325, 400–13. Moreover, ALJ Valente noted that plaintiff's own report of activities—including regular social outings, household management, and long-distance travel—belied her testimony of debilitating mental limitations. Tr. 583, 585; *see, e.g.*, Tr. 429–31, 436, 491, 549.

Third, ALJ Valente discounted plaintiff's testimony about lower-extremity limitations regarding sitting and the need to lie down due to pain based on the inconsistency of her allegations with the medical record, her own statements, and her daily activities. For example, contrary to plaintiff's complaints of disabling lower-extremity pain, problems of walking and standing, and lack of improvement after surgery:

- Plaintiff reported improvement after foot surgery, Tr. 449–52, 534–38, 1612;
- Consultative examiner Dr. Mark Heilbrunn, M.D., observed plaintiff's ability to complete all ranges of motion and to mount/dismount the examination table; adequate balance on either leg and the ability to crouch, kneel, and crawl; normal station and gait, normal hand coordination bilaterally, and negative Romberg; normal strength without atrophy, normal deep tendon reflexes, and intact sensation throughout her upper and lower extremities bilaterally, Tr. 347–53; and

- Overall, plaintiff presented to medical providers regularly in no acute distress; had a normal gait, heel walking, to walking, muscle tone, and strength; showed no muscle atrophy; and had little or no deficit in range of motion; and neurological finders were normal or non-focal, *see, e.g.*, Tr. 397–99, 469, 479, 1154, 1156, 1161–62, 1169, 1179, 1184, 1186–87, 1203, 1236, 1241, 1250, 1272, 1499, 1770–74.

Tr. 2795–96. Even while plaintiff complained of severe pain that left her bedridden, she presented repeatedly in no acute distress and with a normal range of motion, normal gait, and normal muscle strength. Tr. 2421; *see* Tr. 1186–87, 1495–96, 1773–74. Although plaintiff stated that she had to use a cane beginning in 2010, she presented with a cane only once during the relevant period; and while she testified to needing to use a walker with a seat in order to cook, no such device was recommended or prescribed and she never presented at an appointment with a walker or reported having to use such a device. Tr. 2421; *see* Tr. 1210, 1212, 1226–36. Moreover, that plaintiff was bedridden with pain was contradicted by plaintiff's management of the household, cooking and preparing meals, doing laundry, driving, shopping, attending college full-time with a 3.88 GPA, and walking around campus with a backpack. Tr. 2423–24; *see* Tr. 348, 549, 1128, 1145, 1154, 1160–62, 1167, 1214, 1240, 1272–73, 1480, 1707.

Plaintiff contends that ALJ Meyers failed to state clear and convincing reasons for discounting plaintiff's testimony by adopting ALJ Valente's detailed evaluation of plaintiff's symptom testimony because ALJ Meyers and ALJ Valente made different findings; ALJ Meyers did not indicate whether he considered any testimony other than from the most recent hearing specifically mentioned in the 2020 decision; and ALJ Meyers failed to expand his findings in light of the entire record or to provide any independent assessment of plaintiff's testimony. Dkt.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 7

12, at 3–4. These contentions are unpersuasive. First, while it is clear that ALJ Meyers determined that ALJ Valente made different findings regarding plaintiff's RFC, ALJ Meyers found that plaintiff was *more* limited than did ALJ Valente. Thus, that ALJ Meyers discounted plaintiff's testimony *less* than did ALJ Valente does not mean that ALJ Valente's reasons for discounting plaintiff's testimony were invalid. Second, ALJ Valente considered testimony that predates the testimony cited expressly by ALJ Meyers in the 2020 decision such that, by incorporating ALJ Valente's opinion, ALJ Meyers considered all the testimony that ALJ Valente herself considered. Third, the Court declines to presume that by adopting ALJ Valente's examination of plaintiff's testimony that ALJ Meyers failed to determine independently whether the stated reasons were supported by the record. That ALJ Meyers found plaintiff to have greater limitations than earlier assessed demonstrates that he independently reviewed the record and came to different conclusions about plaintiff's functional limitations.

The Court finds that plaintiff has not demonstrated that ALJ Meyers's decision to discount plaintiff's testimony was unreasonable, unsupported by substantial evidence, or the result of harmful legal error.

**2. Dr. Brewer's Treating Opinion**

Plaintiff argues that ALJ Meyers failed to give specific and legitimate reasons for discounting the May 2016 opinion of treating podiatrist Dr. Bruce Brewer, D.P.M. *See Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017). The Court disagrees.

In May 2016, treating podiatrist Dr. Brewer filled out a two-page, checkbox form in which he opined that plaintiff could sit for no longer than two hours, needed to shift at will from sitting and standing/walking, should have complete freedom to rest throughout the day, and would need to be absent from work more than four times per month. Tr. 2409. Dr. Brewer's only

written comments were that plaintiff suffered from "chronic pain." Tr. 2410. Dr. Brewer also checked a box stating that patient was limited to this extent prior to March 31, 2011. *Id.* The ALJ gave little weight to Dr. Brewer's opinion because it contained minimal discussion and rationale for the proposed functional limitations; there was no basis regarding absenteeism and off-task time; the only medical condition mentioned was "chronic pain"; as a podiatrist, Dr. Brewer was only qualified to address foot issues; and the treatment notes did not reflect the level of limitation opined, particularly the severe limitations noted in standing, walking, and sitting. Tr. 2746. Put more simply, ALJ Meyers found Dr. Brewer's May 2016 opinion to be conclusory and inadequately supported by clinical findings. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). This was a specific and legitimate reason supported by record evidence for discounting Dr. Brewer's opinion and is consistent with the scope of the Court's original remand of ALJ Valente's 2016 decision.

In 2017, the Court directed the ALJ to "reconsider other evidence of record associated with Achilles tendonitis, including the opinions of Dr. Brewer and medical records subsequent to the report of mild improvement and continuing through the date on which the ALJ [Valente] found plaintiff limited to sedentary work [on June 1, 2015]." Tr. 2539. The cited report of mild improvement was offered by Dr. Brewer on June 16, 2010, when Dr. Brewer also observed that plaintiff was in no acute distress with decreased swelling and only mild tenderness, and concluded that plaintiff's "Achilles tendon [was] intact with good strength." Tr. 486. Subsequently, in October 2010, Dr. Brewer noted a significant decrease in the swelling of the Achilles tendon with decreased tenderness, a range of motion in the ankle joint within normal

limits, and "[s]atsifactory improvement." Tr. 449. In December 2010, Dr. Brewer noted that the surgery had helped in a mild fashion on the left ankle but that the ankle pain had returned bilaterally and appeared worse than before. Tr. 444. Nonetheless, Dr. Brewer noted decreased swelling, no change in gait pattern, and planned to have plaintiff use orthotics for a few months and follow up as needed. *Id.*

ALJ Meyers expressly reconsidered Dr. Brewer's 2016 checkbox opinion in light of the medical evidence from the relevant period, including Dr. Heilbrunn's opinion, and determined that plaintiff had a more limited RFC than did ALJ Valente. Tr. 2746–47 (citing Tr. 1092–1365 (medical records)). While ALJ Valente had assessed an RFC of light work with occasional stooping and climbing, Tr. 2418, ALJ Meyers assessed an RFC of sedentary work that included the need for the use of a cane for walking in the workplace and Dr. Brewer's limitation to needing the ability to elevate her feet 12 inches while seated, Tr. 2744. That is, ALJ Meyers reconsidered the evidence of record concerning Achilles tendonitis that post-dated Dr. Brewer's 2010 treatment notes, determined that plaintiff was more restricted than previously determined, and otherwise adopted the review of the evidence regarding lower extremity limitations set forth by ALJ Valente. Tr. 2747; *see* Tr. 2420–21.

The Court finds that plaintiff has not demonstrated that ALJ Meyers's decision to discount the May 2016 opinion of Dr. Brewer was unreasonable, unsupported by substantial evidence, or the result of harmful legal error.

**3. Assessment of Functional Areas at Step Three**

Plaintiff correctly notes that the ALJ relied on outdated criteria when evaluating at step

three whether plaintiff satisfied the B criteria for the mental disorders in Listing 12.00.[2] Dkt. 10, at 15–17. The Court finds, however, that the ALJ's error was harmless.

Plaintiff has not demonstrated how the ALJ's incorrect citation to old paragraph B criteria makes a difference in her case and offers no persuasive evidence to show that her impairments satisfy any of the listed impairments in 12.00. ALJ Meyers cited evidence showing that plaintiff's mental impairments were not per se disabling under the listings. Tr. 2743–44. Moreover, while ALJ Meyers determined that plaintiff suffered from severe mental impairments and accounted for them in the RFC assessment, plaintiff fails to indicate how the ALJ misevaluated the medical evidence in a manner that would suggest that those impairments met or equaled a listed impairment at step three.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 24th day of September, 2021.

BRIAN A. TSUCHIDA
United States Magistrate Judge

---

[2] To determine whether a claimant meets the B criteria for mental disorders, the ALJ rates the degree of severity of a claimant's limitation in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or pace; and (4) adapting or managing oneself. 20 C.F.$. Pt. 404, Subpt. P, App. 1, 12.00(A)(2)(b) (effective at the time of ALJ Meyers' November 2020 decision). Here the ALJ found that plaintiff's mental impairments did not satisfy one of the listings under 12.00, but in doing so, he cited outdated B criteria that no longer applied to plaintiff's claim. Tr. 2743–44.